[Crim. No. 22704. First Dist., Div. Two. Nov. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY RAY MASTEN et al., Defendants and Appellants.

COUNSEL

Theodore Winchester and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Deborah Long, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Thomas A. Brady and Eugene W. Kaster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MILLER, J.—Appellants Henry Ray Masten and Freddie James Matilton were each charged by information with one count of kidnaping, rape, oral copulation, and two counts of assault with a deadly weapon. (Pen. Code, §§ 207, 261; 288a, subd. (c); 245, subd. (a).) Each count alleged that Matilton used and Masten was armed with a firearm. (Pen. Code, §§ 12022.5; 12022, subd. (a).)

Appellant Matilton pleaded guilty to one count of kidnaping, one count of assault and being armed with a deadly weapon. He was sentenced to 10 years in state prison.

A jury convicted appellant Masten of rape, oral copulation and kidnaping. The latter conviction was enhanced due to a finding that Masten was armed with a firearm. His sentence totalled 17 years and 8 months.

Both Matilton and Masten appeal.

The record shows that on the evening of October 29, 1980, Helena M. and her husband Tito drove the short distance from their home to a spot on the banks of the Trinity River. After approximately a half hour, they attempted to leave but discovered that their car would not start.

Shortly thereafter, Tito fell asleep and Helena began walking toward their home to get help. On the road, she flagged down a pickup truck being driven by appellant Masten. Helena did not then know Masten, but she had previously seen appellant Matilton, who was riding in the passenger side of the truck. Helena asked them for a "jump" for her battery and they drove her back to the car. She was unable to find her jumper cables, however, and Masten and Matilton left.

Helena and her husband then decided to go to their home to get some blankets and return to spend the night in the car to protect it from vandalism. When they arrived back at their car, the trunk was open and several items were missing. They locked the doors of the car and went to sleep.

Some time later, they were awakened by the sound of a motor. Masten and Matilton, who had returned in Masten's pickup, walked up to the car. Matilton asked Tito if he had any dope. Matilton then opened the door, grabbed Tito and pointed a gun at him. A shot was fired, shattering the car window. Although unhurt, Tito slumped forward onto the dashboard. Helena thought that her husband had been shot. Matilton then fired a second shot in her direction, and Masten said, "Let's take her."

Helena accompanied appellants to their truck and was compelled to enter. They drove for a short time and then stopped. Masten got out, taking Helena with him and said to Matilton, "Well, you know where the piece is." Helena understood this to refer to the gun.

Masten took Helena about 100 feet from the truck, threw down his sweatshirt and told Helena to lay on it. He fondled her breasts and thighs and indicated that he was going to have sex with her. They then engaged in an act of sexual intercourse and Masten orally copulated her.

When these acts were completed Masten and Helena dressed and returned to the truck where Matilton was waiting. After they drove off Masten told Helena, "If you think we are going to take you home, you're wrong." At this point, Masten lost control of the vehicle and drove it off the road.

In the aftermath of the accident, a friend of Masten's drove by, stopped and agreed to take Helena to the hospital. Soon after, the police, having been notified by Tito and Helena, took the appellants into custody.

*Appellant Matilton's Contentions*

█ Appellant Matilton first contends that he was inadequately represented by counsel during the plea-bargaining phase of the proceedings. We cannot consider the merits of this argument, since Matilton has not complied with Penal Code section 1237.5[1] When a conviction results from a plea of guilty, appellate review is precluded unless the appellant files a statement with the trial court showing grounds for review, and obtains a certificate of probable cause from the court. Since appellant asserts that he was ineffectively represented, he is challenging his conviction. (See *People* v. *Santos* (1976) 60 Cal.App.3d 372, 376 [131 Cal.Rptr. 426].) This he cannot do unless he complies with the procedural requirements of section 1237.5.

However, an appellant is not required to comply with section 1237.5 when he asserts that errors occurred in proceedings held subsequent to a guilty plea. (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 8 [136 Cal.Rptr. 409, 559 P.2d 1028].) Therefore, we turn to Matilton's arguments that the court erroneously sentenced him to consecutive terms for the kidnaping and the assault with a deadly weapon convictions.

█ Appellant Matilton argues that pursuant to section 654 he may not be sentenced to consecutive terms for offenses which comprise a single course of conduct. Alternatively, appellant contends that the sentencing court misapplied the criteria set forth under rule 425 of the California Rules of Court, and that concurrent rather than consecutive sentences should have been imposed. Appellant's contentions cannot be sustained in the context of a plea bargain.

Ordinarily, multiple sentences imposed in contravention of section 654 are beyond the power of the court. (*In re Wright* (1967) 65 Cal.2d 650, 655 [56 Cal.Rptr. 110, 422P.2d 998]; *People* v. *Isenor* (1971) 17 Cal.App.3d 324, 336 [94 Cal.Rptr. 746].) The purpose of that section is to prevent harassment of a defendant by cumulative sentencing not commensurate to actual culpability. (*People* v. *Jones* (1981) 124 Cal.App.3d 749, 754 [177 Cal.Rptr. 605].) An accused will not be deemed "harassed" under section 654 when the claimed

---

[1]Penal Code section 1237.5 provides: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

All further code sections will refer to the Penal Code unless otherwise indicated.

harassment results from his own conduct. (*In re Troglin* (1975) 51 Cal.App.3d 434, 439 [124 Cal.Rptr. 234].) Thus, in the context of a plea bargain, the imposition of consecutive sentences is not violative of section 654. (*People v. Jones, supra,* 124 Cal.App.3d 749, 754-755; *In re Troglin, supra,* 51 Cal.App.3d 434, 438-439.) As the People are held strictly to the terms of the plea bargain, the accused also must be held to his agreement. (*Ibid.*)

Here, appellant Matilton pled guilty to kidnap, a charge enhanced by a use allegation, and assault with a deadly weapon. As part of the plea bargain, charges of rape, oral copulation and a further count of assault with a deadly weapon were dropped. The 10-year sentence he received was substantially lower than the sentence to which he would otherwise have been exposed. Appellant was informed by the trial court that he could be sent to prison for an aggregate of 10 years as a result of the guilty pleas and he indicated that he understood. Thus, he is bound to accept the sentence he agreed to, just as the People must keep their part of the bargain.

*Appellant Masten's Contentions*

■ Appellant Masten first argues that the failure of the trial court to give CALJIC No. 2.01,[2] which explains the application of circumstantial evidence in determining guilt, was an abuse of discretion requiring reversal. Since Masten testified that he believed that Helena had accompanied him willingly and consented to the sexual acts, he contends that any evidence probative of his state of mind was necessarily circumstantial, and required a reading of CALJIC No. 2.01. The trial court, finding the evidence to be noncircumstantial in nature, refused to give the proffered instruction.

■ The duty to instruct on circumstantial evidence arises only when such evidence is substantially relied upon for proof of guilt. (*People v. Yrigoyen* (1955) 45 Cal.2d 46, 49 [286 P.2d 1].) In *Yrigoyen,* the court held that the

---

[2]CALJIC No. 2.01 (1979) rev.) reads: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

"Also, if the circumstantial evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

"If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

failure to give a cautionary instruction constituted reversible error "where criminal knowledge is shown *only* by circumstantial evidence." (*Id.*, at pp. 49-50, italics added.) However, when circumstantial evidence is only corroborative of direct evidence, or of an incidental nature, the cautionary instruction need not be given. (*Id.*, at p. 50; *People* v. *Butler* (1980) 104 Cal.App.3d 868, 877 [162 Cal.Rptr. 913]; *People* v. *Salas* (1976) 58 Cal.App.3d 460, 473 [129 Cal.Rptr. 871].) Even where circumstancial evidence is strong, the prosecution is not precluded from substantial reliance on direct evidence for proof of guilt. (*People* v. *Butler, supra,* 104 Cal.App.3d 868, 878.)

Thus, the need to give CALJIC No. 2.01 is not triggered merely by the prosecution's use of circumstantial evidence from which the jury might draw inferences as to the defendant's criminal intent or conduct. As our Supreme Court has stated: "The fact that the elements of a charged offense include mental elements that must necessarily be proved by inferences drawn from circumstantial evidence does not alone require an instruction on the effect to be given such evidence . . . . The contrary is usually the rule." (*People* v. *Wiley* (1976) 18 Cal.3d 162, 175 [133 Cal.Rptr. 135, 554 P.2d 881].) A judgment will be upheld so long as the prosecution relied primarily on direct evidence, that is, evidence that directly proves a fact, without inference or presumption, and which in itself, if true, conclusively establishes that fact. (Evid. Code, § 410.)

In the instant case, the focus of our inquiry is on the extent of the prosecution's substantial reliance on circumstantial as opposed to direct evidence. The prosecution's case centered on the testimony of Helena and her husband and, therefore, consisted principally of direct evidence. This evidence included statements of appellant Masten which the jury could construe as probative of his state of mind.[3] Equally significant was the evidence of Masten's behavior which was consistent with a rational conclusion of his criminal intent. The firing of shots at both Tito and Helena and the subsequent sexual assault of Helena while Matilton stood guard with a gun is certainly inconsistent with Masten's claim of consent. It is clear that the evidence upon which the appellant was convicted was primarily direct evidence; and, therefore, we conclude that the trial court correctly refused to read the cautionary instruction.

Appellant Masten contends that because the trial court failed to instruct the jury *sua sponte* in accordance with CALJIC No. 17.01,[4] it is unclear

---

[3] There was testimony as to Masten's statements, "Let's take her," "you know where the piece is," and "If you think we are going to take you home, you're wrong."

[4] CALJIC No. 17.01 provides "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

whether or not the jury unanimously agreed that he had committed the same single act of kidnap as charged in the information. His contention is based on the theory that there were two possible incidents of kidnaping which could be construed from the evidence. One occurred before the rape, when Helena first accompanied appellants; the other was subsequent to the rape, when appellants refused to release her.

■ It is a fundamental rule that the entire jury must agree upon the commission of the same act in order to convict a defendant of a charged offense. (*People* v. *Williams* (1901) 133 Cal. 165, 168 [65 P. 323]; *People* v. *Castro* (1901) 133 Cal. 11, 13 [65 P. 13].) If the defendant is prosecuted for violation of a statute under which any one of several different acts could constitute the offense, the jury must be told that a verdict of guilty must be supported by a unanimous finding that one of the acts was committed. (*People* v. *Heideman* (1976) 58 Cal.App.3d 321, 333 [130 Cal.Rptr. 349].)

The law recognizes an exception to this rule where a series of acts forms part of one and the same transaction, and as a whole, constitutes but one and the same offense. (*People* v. *Madden* (1981) 116 Cal.App.3d 212, 218 [171 Cal.Rptr. 897]; *People* v. *Mota* (1981)115 Cal.App.3d 227, 233 [171 Cal.Rptr. 212].) This exception applies to those types of offenses which are continuous in nature, and can be comprised of multiple acts or a course of conduct over a period of time.

■ In *Parnell* v. *Superior Court* (1981) 119 Cal.App.3d 392, 407 [173 Cal.Rptr. 906], this court held that kidnaping is a continuous offense. The issue in *Parnell* was whether the statute of limitations barred a prosecution for kidnaping where the abduction took place seven years prior to the filing of a complaint, but the subsequent detention of the victim continued past the statutory period. We concluded that the forcible detention of a victim is an element of kidnaping and as long as the detention continues, the crime continues. (*Id.,* at pp. 407-408.) The *Parnell* reasoning is analogous here. Helena was taken by her abductors to the place where she was sexually assaulted; after the assault Masten told her she would not be taken home. Given these facts it is illogical to say that Helena was free from detention while being raped or immediately thereafter. Accordingly, the instant facts fall within the exception to the unanimous rule.

■ Appellant Masten next contends that the imposition of consecutive sentences for kidnaping and rape violates the proscription against multiple punishment contained in section 654. We agree.

In relevant part, section 654 provides that "[a]n act or omission which is made punishable in different ways by different provisions of this code may be

punished under either of such provisions, but in no case can it be punished under more than one; . . ." If, in a single and continuous course of conduct, several offenses are committed incident to one objective, the defendant may be punished for only one offense. In prosecutions for kidnap and rape, where the kidnap was clearly the result of an intent to rape, it is violative of section 654 to impose separate sentences for both offenses. (*People* v. *Panky* (1978) 82 Cal.App.3d 772, 783 [147 Cal.Rptr. 341]; *People* v. *Rocco* (1971) 21 Cal.App.3d 96, 109-110 [98 Cal.Rptr. 365].)

The People urge in rebuttal that the sentencing provisions in section 667.6 provide for a statutory exception to the application of section 654. This argument is based on a construction of the language of subdivisions (c) and (d) of section 667.6, which provide for the imposition of "full, separate and consecutive" terms for certain enumerated sex crimes. The People contend that a comparison of these two subsections implies an exception to section 654 which would allow the imposition of consecutive sentences for offenses which comprise a single and continuous course of conduct.

Section 667.6 was enacted as part of a legislative package which dealt with violent sexual offenses.[5] (Stats. 1979, ch. 944, § 10, p. 3258.) Specifically, subdivision (c) of section 667.6 provides that "full, separate and consecutive term" may be imposed for certain sex offenses "whether or not the crimes were committed in a single transaction." However, in looking to the legislative history of the statute, we note that subdivision (c) originally provided that "[a] full, separate, and consecutive term shall be served . . . whether or not the crimes were committed *with a single intent or objective* or during a single transaction." (Amend. to Sen. Bill No. 13, (1979-1980 Reg. Sess.) Mar. 5, 1979, § 10, pp. 15-16, italics added.) This language, which could be reasonably construed to provide for an exception to section 654, was subsequently excised from the final version of the bill.

Accordingly, we reject the argument that the Legislature intended to create an exception to section 654. Section 667.6 subdivision (c) by its terms provides for harsher sentences for violent sexual offenses. Kidnaping is not included in the section's list of enumerated crimes. Thus, where kidnaping is but a part of a continuous course of conduct incidental to the commission of sexual offenses, section 654 precludes the imposition of a consecutive term for the kidnap conviction.

---

[5]The violent sex crimes as enumerated in section 667.6 include rape by force or violence, rape by threat of bodily harm, rape in concert, by force or violence, lewd or lascivious acts upon children under 14 by force, violence or threat, unlawful penetration by foreign object, sodomy by force, violence, duress, menace or threat, and oral copulation by force, violence, duress, menace or threat.

The appropriate procedure for remedying a section 654 violation is to stay execution of the sentence imposed for the lesser offense, such stay to become permanent when service of sentence for the greater offense is completed. (*In re Adams* (1975) 14 Cal.3d 629, 636-637 [122 Cal.Rptr. 73, 536 P.2d 473].) The punishment for kidnaping is less severe than that for the several sexual offenses. Therefore, service of the 20-month kidnaping sentence should be stayed until completion of the otherwise validly imposed sentences for rape and oral copulation, such stay then to become permanent.[6]

■ Masten also attacks the one-year enhancement to the kidnaping conviction imposed for the use of a firearm, pursuant to section 12022 subdivision (a). He asserts that since the kidnaping sentence was pronounced as a subordinate term under section 1170.1, any enhancements are excluded. We agree.

The sentencing scheme as embodied in section 1170.1[7] clearly provides that any enhancement under section 12022 must be attached to the principle term and excludes such an enhancement from attaching to any subordinate term unless such term is imposed for a "violent felony" as defined by section 667.5 subdivision (c).[8]

Here it is clear from the sentencing transcript that the principle term was imposed for the rape conviction, apparently under section 1170.1, the first subordinate term was imposed for the oral copulation conviction under section 667.6 subdivision (c), and the second subordinate term was imposed for the kidnaping under section 1170.1. It was to the kidnaping conviction that the enhancement under section 12022 subdivision (a) was attached.

---

[6]We note that the People have requested that the kidnaping sentence be remanded for sentencing. Since we have determined that the sentence for the kidnaping conviction must be stayed, we need not address this issue.

[7]Section 1170.1 subdivision (a) provides, in pertinent part: "The principle term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 12022; . . . The subordinate term for each consecutive offense *which is not a 'violent felony' as defined in subdivision (c) of Section 667.5* shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and *shall exclude any enhancements.*" (Italics added.)

[8]Subdivision (c) of section 667.5 defines "violent felony" as any of the following: (1) Murder or voluntary manslaughter; (2) Mayhem; (3) Rape as defined in subdivision (2) of section 261; (4) Sodomy by force, violence, duress, menace, or threat of great bodily harm; (5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm; (6) Lewd acts on a child under 14 as defined in section 288; (7) Any felony punishable by death or imprisonment in the state prison for life; (8) Any other felony in which the defendant inflicts great bodily injury on any other person other than an accomplice which has been charged and proved as provided for in section 12022.7 or any felony in which the defendant uses a firearm which use has been charged and proved as provided in section 12022.5.

Under the facts of this case, the kidnap cannot be considered a "violent felony" as defined by section 667.5 subdivision (c). Kidnap is not one of the enumerated crimes in that section, nor is it a felony involving the personal use of a firearm as defined in section 12022.5. Therefore, we have no choice but to reverse the enhancement imposed by the trial court and remand the case for resentencing.

■ Masten urges that his sentences for oral copulation under section 667.6 subdivision (c) must be set aside because the Judicial Council has not promulgated a specific sentencing rule to guide trial courts in selecting between full consecutive terms pursuant to section 667.6 and consecutive terms of one-third the middle base term pursuant to section 1170.1 subdivision (a). He argues that without a specific rule setting forth uniform criteria, the purposes of the Uniform Determinate Sentencing Act are violated and persons such as the appellant are denied equal protection of the laws. We cannot agree.

In response to the identical argument, the appellate court, in *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 238 [182 Cal.Rptr. 406], held that rule 425 of the California Rules of Court prescribed adequate criteria for sentencing under section 667.6. The court stated: "The decision to sentence a defendant under Penal Code section 667.6 subdivision (c) rather than section 1170.1, is a decision concerning consecutive rather than concurrent sentencing, and the factors listed in rule 425 are the proper factors to consider in making that choice. It would be contrary to the legislative intent of Penal Code section 667.6, subdivision (c) to hold that a trial court could not exercise the discretion granted until the Judicial Council provides a specific rule governing that choice when the rule would of necessity be a mere reiteration of existing rule 425." (*Ibid.*) We concur with this analysis.

■ Masten also attacks the consecutive sentence imposed under section 667.6 on the grounds that it constitutes an enhancement and therefore must be pleaded and proven. He argues that the term "enhancement" necessarily includes consecutive sentences imposed under section 667.6. If so, the directive of section 1170.1 subdivision (e), which provides that "The enhancements provided in . . . 667.6 . . . shall be pleaded and proven as provided by law" was violated by the imposition of the consecutive sentence in the instant case.

We are in agreement with the decision in *People* v. *Stought* (1981) 115 Cal.App.3d 740 [171 Cal.Rptr. 501], which appellant urges us to disregard. In *Stought* the appellate court faced this same question and concluded that any sentence imposed under section 667.6 subdivision (c) was *in lieu* of any

enhancements pursuant to section 1170.1. (*Id.*, at p. 742.) Sentencing under section 667.6 subdivision (c) does not require any further pleading or proof. Therefore, we decline to reverse the consecutive sentence for oral copulation on these grounds.

Masten next argues that the imposition of the consecutive term for the oral copulation conviction under section 667.6 denies him equal protection of the laws. He contends that since those who are convicted of certain sexual offenses can be sentenced either to diminished subordinate terms under section 1170.1 subdivision (a) or to full and consecutive terms under section 667.6 subdivision (c), those sentenced under the latter provision receive disparate treatment in violation of the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution.

Recently, in *People* v. *Karsai, supra,* 131 Cal.App.3d 224, 243-244, the appellate court upheld section 667.6 as nonviolative of equal protection. In *Karsai,* the appellant was sentenced pursuant to section 667.6 to full consecutive terms for oral copulation by force and rape by force. He contended that violent sex offenders sentenced under section 667.6 received disparate treatment from all others convicted of violent felonies. Writing for the court, Justice Reynoso noted that this class was too broad and affirmed the power of the Legislature to deal differently with those convicted of violent sex offenses.

Here, appellant has narrowed the class from all violent felons to all those convicted of violent sex offenses. He contends that since those sentenced under section 667.6 rather than section 1170.1 receive considerably harsher terms, persons sentenced under the former provision receive disparate treatment violative of equal protection.

We cannot agree. Persons convicted of violent sexual offenses are similarly situated in that they have been convicted of the same types of offenses and may be sentenced under either of the two sentencing provisions. A fundamental aspect of our criminal justice system is that a court possesses considerable discretion to impose a sentence proportionate to the seriousness of the offense. In cases involving multiple offenses, the courts are guided by the various criteria set forth in the California Rules of Court in determining whether to impose concurrent as opposed to consecutive sentences. (See Pen. Code, § 669.) Similarly, the court considers these same criteria when multiple violent sex offenses are involved in determining sentence under either section 1170.1 or section 667.6. When, under the facts of a given case, a court decides to impose a harsher sentence under section 667.6, this does not in itself comprise a violation of equal protection.

Finally, Masten contends that the case must be remanded for resentencing, asserting that the court did not state its reasons for imposing consecutive sentences for the oral copulation and kidnaping convictions. As we have already stayed the kidnaping sentence, we need only address the consecutive sentence imposed for the oral copulation.

Masten was sentenced pursuant to section 667.6 to a seven year consecutive term for the oral copulation conviction, in lieu of any subordinate term under section 1170.1. The question here is whether section 1170 subdivision (c), which provides that a court "shall state the reasons for its sentence choice on the record at time of sentencing," applies to a consecutive sentence determined under section 667.6.

The imposition of a consecutive sentence is a sentencing choice. (*People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 704 [173 Cal.Rptr. 71].) It has been established that when the sentencing court imposes consecutive sentences under section 1170.1 the failure of the court to state its reasons in determining sentence is reversible error. (*Ibid.; People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66].) The requirement that a court specify its reasons for determining sentence is in conformity with the legislative objectives of facilitating appellate review (*People* v. *Lock* (1981) 30 Cal.3d 454, 459 [179 Cal.Rptr. 56, 637 P.2d 292]), achieving uniformity of sentences (Pen. Code, § 1170, subd. (a)(1); Cal. Rules of Court, rule 410(g)), and to insure that the dual-use-of-facts prohibition is not violated.

We hold these concerns to be fully applicable to sentencing choices under section 667.6. While the terms of the sentence imposed for violent sexual offense may be separately calculated under section 667.6, the court must state its rationale in imposing a consecutive sentence. (See *People* v. *Karsai, supra,* 131 Cal.App.3d 224, 238.)

Here, it is clear that the court failed to state its reasons for electing to impose a consecutive sentence. While it reviewed the aggravating and mitigating factors, it only referred to these factors in the sentencing for the rape conviction, and was silent as to its reasons for imposing a consecutive sentence under section 667.6 for the oral copulation conviction. In an analogous situation, where a sentencing court had listed all aggravating and mitigating circumstances in its discussion of the base term under section 1170.1, and then summarily imposed consecutive sentences for additional counts, a violation of 1170 subdivision (c) was found. (*People* v. *Bejarano, supra,* 114 Cal.App.3d 693, 704-705.) Since the court below did not expressly state its reasons for imposing the consecutive sentence, we must reverse the sentence imposed for the oral copulation and remand the case for resentencing.

The judgment as to Matilton is affirmed. The judgment as to Masten is remanded to the court for resentencing in accordance with the views expressed herein. In all other respects the judgment as to Masten is affirmed.

Grodin, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied December 14, 1982.